UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN MOHAMAD RIZK,

    Petitioner,                                                         CASE NO. 2:08-12737
                                                                  HONORABLE PAUL D. BORMAN
v.                                                                UNITED STATES DISTRICT JUDGE

JOHN PRELESNIK,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

       Hassan Mohamad Rizk, ("petitioner"), presently confined at the Oaks Correctional Facility in Manistee, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; M.S.A. 28.548; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; M.S.A. 28.424(2). For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

       Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

       The evidence in the case established that the victim was a homeless person who went into the Citgo gas station in Detroit, Michigan, where petitioner was employed. Petitioner and the victim got into a confrontation. Two women named Angela Kelly and Tara Brown both witnessed

petitioner shoot the victim in the back of the head near the gas pumps.

Officer Ryan Connor testified to responding to the scene and observing the victim's body with no vital signs. Connor questioned petitioner, who informed him that he didn't hear any gunshots, because he was in the back section of the gas station getting some re-stocking items. When petitioner returned to the store, he observed a female that he thought was asleep near the gas pumps. Petitioner told Officer Connor that he exited the store, observed that the victim was shot, and called 9-1-1. Connor testified that the gas station was in a neighborhood known for gunshots.

Officer Scott Pellerito testified to also responding to the scene. Pellerito spoke with another individual named Anthony Walker at the gas station. Pellerito stated that it was normal to have gunshot runs at night in that neighborhood. Officer Pellerito testified further that there was a lot of drug activity and prostitution in the area. Pellerito acknowledged a correlation between drug dealing and gun violence.

Oswald Anthony Walker testified to "helping out" at the Citgo gas station on the night of the shooting. Walker testified that petitioner kept a black revolver and a silver nine millimeter handgun at the store, both of which had rubber hand grips. Walker testified that the victim had been in the store earlier that night, and petitioner had ordered her to leave because she was loitering. Before taking a nap, Walker had noticed petitioner with the black revolver. Walker testified that after he fell asleep in the walk-in cooler, petitioner woke him and told him there was someone outside. Walker and petitioner went outside and looked at the victim's body. Petitioner called the police on his cell phone. Walker testified that petitioner told him to leave and that he would take care of everything. Walker refused, and sat behind the counter, waiting for the police. Walker testified that petitioner told him, "if any questions it was to be that we were stocking in the cooler and then we

came out and then noticed the body." Walker admitted that when the police arrived, Walker told them that he and petitioner had been stocking the cooler at the time of the shooting. Both Walker and Petitioner submitted to gunshot residue tests. Walker testified that petitioner changed his shirt and washed his hands with alcohol between the time the police asked to do the test and actually administered it.

The prosecutor played portions of a videotape made from a surveillance camera inside the store, and Walker pointed out that the officers asked about the gunshot residue test at 6:48 a.m., and petitioner was wearing a red shirt at 6:50 a.m., although he had a Polo shirt on beforehand.

Walker testified that he spoke with Sergeant Williams about four days later and told him that he had been asleep in the cooler at the time of the shooting. Walker admitted being arrested and jailed on a material witness warrant since January 20, 2006, after failing to appear in court on December. After the police left, Walker observed petitioner place the gun into the trunk of a blue car that petitioner drove all the time.

During cross-examination, the following exchange occurred:

Q (by defense trial counsel): Mr. Walker, were you high that night, the night of the 7th , 2005, the night that you just happened to come help out, but you weren't being paid by anybody? Were you intoxicated?

A. (Mr. Walker):  No.

Q. Do you see drugs at that location, at the Citgo gas station when you just happened to come by to help out-

Ms. Walker (prosecutor): (Interposing) Objection.

Q. (By defense counsel continuing): And not get paid?

Ms. Walker: Improper question. That's an improper question.."(Tr. 2/23/2006, pp. 102-03).

3

Outside the jury's presence, defense counsel made the following offer of proof:

(Defense counsel).: Well, let me explain to you why I think it's relevant now. You can tell me if you feel I'm right or wrong. You're the arbiter here. There's been testimony already in this case from police officers concerning this area and this specific gas station, the Citgo at ...Kercheval and Chalmers. There has been testimony that there is drug activity in this area. There is testimony that there is gun violence that follows, that rides on the back of the drug activity. And now I'm at the point in this case, which is a murder case, where I believe I can connect the drug activity and the potential for gun violence. And it may not necessarily point to my client. (*Id*. at p. 114). [1]

The trial court excluded the evidence as irrelevant. (*Id*. at pp. 116-17).

Officer Gerald Thomas testified to responding to the scene and directing evidence technicians to perform gunshot residue tests on petitioner and Walker. Thomas told the men not to wash their hands, but did not tell them to refrain from changing clothes.

Detroit Police evidence technician Errol King testified to performing a gunshot residue test on petitioner at the gas station. Petitioner was wearing an orange colored top and blue jeans. King testified that, in response to questioning, petitioner informed him he had not washed his hands, possessed a gun, or been in the vicinity of a gun being fired. Over the objection of defense counsel, the prosecutor elicited testimony from King that petitioner never told him anything about changing clothes between the time the officers arrived on the scene and the time that King collected samples from him. (Tr. 2/27/2006, pp. 16-17).

Detroit Police Department forensic chemist William Steiner analyzed the gunshot residue samples from petitioner and Walker. Petitioner tested positive for gunshot residue on the web of the right hand, web of the left hand, and forehead. All of Walker's tests were negative.

---

[1] Frank Evans testified at the preliminary examination that an individual known as "Jack" or "Snipes" had been selling drugs at the gas station on the night of the shooting Walker admitted at trial to using those nicknames at the gas station.

4

On the fourth day of trial, the prosecutor recalled Oswald Walker to testify that the previous day, while together in the bullpen, petitioner had offered Walker a $ 5,000.00- $10,000.00 bribe to change his testimony back to Walker's first statement to the police, i.e. about petitioner being in the store's cooler with him at the time of the shooting.

Petitioner's conviction was affirmed on appeal. *People v. Rizk*, No. 269865 (Mich. Ct. App. October 16, 2007); *lv. den.* 480 Mich. 1075, 744 N.W.2d 154 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. That the trial court violated petitioner's due process right to present a defense by excluding evidence of drug dealing at the gas station where the shooting occurred, where offered to provide an alternative explanation for the decedent's murder.

II. That the prosecutor violated petitioner's due process rights and used petitioner's prearrest silence as substantive evidence of guilty, by introducing evidence that petitioner did not inform the police that petitioner had removed his shirt before submitting to a gunshot residue test; furthermore, defense trial counsel was constitutionally ineffective in failing to object.

## II.   LEGAL STANDARD

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

5

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. ANALYSIS

### A. The motions to strike respondent's answer.

Petitioner has filed a motion for an evidentiary hearing and a motion to strike respondent's answer and to sanction him, based on the fact that respondent filed his answer two days beyond the time limit for filing the answer.

The Court will deny petitioner's request to strike any late answer that is filed by the respondent. As another judge in this district has indicated: "There is no way a § 2254 case can be decided on a petitioner's submission only, and a court should not put itself in a position of considering the petition without a response by the respondent." *Mahaday v. Cason,* 222 F. Supp. 2d 918, 921 (E.D. Mich. 2002) (*citing to Beall v. Cockrell,* 174 F. Supp. 2d 512 (N.D. Tex. 2001)). While another judge in this district has refused to grant an extension of time to the State of Michigan to file an answer and has considered a habeas petition without having the benefit of an answer from the respondent, *see Wilkerson v. Jones,* 211 F. Supp. 2d 856 (E.D. Mich. 2002), the problem with this approach is that any such decision by the court "creates a self-inflicted wound," because without a response from the State of Michigan, "a judge is left with a one-sided view of the habeas corpus petition–that of the prisoner, who is most likely untrained in the law and has submitted a short

petition to the court that does not include records and transcripts from the court proceedings in which the prisoner was convicted." *Mahaday,* 222 F. Supp. 2d at 921. Under these circumstances, a judge is unable to "isolate the precise contours of the dispute", because he or she would be "missing half of the story," i.e., the state court proceedings, which are necessary to properly adjudicate the habeas petition. *Id.* Therefore, although an expeditious review of a habeas petition is desirable, a quick adjudication of the petition should not be done at the expense of an incomplete review. *Id.* at 922. Accordingly, the Court will not strike any answer or other pleadings which were filed by the State of Michigan beyond the original due date of January 6, 2009.

**B. Claim # 1. The right to present a defense claim.**

Petitioner first claims that that the trial court violated his right to present a defense by refusing to allow defense counsel to question Walker about whether he witnessed any drug dealing taking place at the Citgo Gas Station on the night of the shooting. Petitioner claims that this excluded evidence would have established that another person was responsible for the victim's murder.

The Michigan Court of Appeals rejected the claim, noting that Officer Pellerito provided testimony that there was drug activity in the area of the gas station. The Michigan Court of Appeals further concluded that in light of the overwhelming evidence against petitioner, it was highly unlikely that the additional testimony from Walker concerning the drug activity in the vicinity of the gas station would have affected the outcome. *Rizk,* Slip. Op. at * 1.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due

7

Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

As a general rule, evidence of third party culpability is generally not admissible unless it is coupled with substantial evidence tending to directly connect that person with the actual commission of the offense. *See Andrews v. Stegall,* 11 Fed. Appx. 394, 396 (6th Cir. 2001) (*citing Walters v.*

8

*McCormick*, 122 F. 3d 1172, 1177 (9th Cir. 1997)).  Although federal courts have granted habeas relief from state convictions when the trial court arbitrarily excluded evidence tending to show that another person might have committed the crime, they have done so only when there was some demonstration connecting another person to the crime for which the defendant is on trial. *See Cikora v. Dugger*, 840 F. 2d 893, 898 (11th Cir. 1988).

In the present case, the trial court did not deprive petitioner of his right to present a defense. Officer Conner testified that the area around the Citgo gas station was known for gunshots. Officer Pellerito testified that the police received a high number of gunshot runs in the neighborhood at night. Pellerito testified that there was a lot of drug activity and prostitution in the area. Pellerito acknowledged a correlation between drug dealing and gun violence. In his closing argument, counsel was able to bring up the fact that the area around the gas station where the shooting occurred was a high crime neighborhood with a high amount of drug trafficking. (Tr. 3/1/2006, p. 45). The trial court's exclusion of testimony from Walker about drug activity in the area of the gas station on the night of the shooting was not so egregious that it effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from presenting testimony concerning the high level of gun violence and drug activity in the area, so as to establish that someone else committed the murder. *See Fleming v. Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009); *cert. den. sub nom Fleming v. Rapelje*, 130 S. Ct. 103 (2009). With the quantum of evidence on the defense theory in the record, this Court concludes that the petitioner was afforded "a meaningful opportunity to present a complete defense." *Allen v. Howes,* 599 F. Supp. 2d 857, 873 (E.D. Mich. 2009) (citing *Crane*, 476 U.S. at 690 (citation and internal quotations omitted)).

Moreover, any possible error in the exclusion of this proferred testimony from Walker

9

concerning drug activity at the gas station on the night of the shooting was harmless error, in light of the overwhelming evidence of guilt. *Fleming,* 556 F. 3d at 537. Two eyewitnesses identified petitioner as the shooter. Petitioner tested positive for gunshot residue on the web of the right hand, web of the left hand, and forehead, whereas all of Walker's tests were negative, thus ruling out the probability of Walker being the shooter. Walker testified that petitioner twice asked him to provide a false alibi for him, even offering him money to testify falsely that petitioner was with him in the gas station's cooler when the shooting took place. An attempt to procure perjured testimony to manufacture a false alibi defense can be considered as evidence of guilt as to the crime charged under both Michigan and federal law. *See People v. Ranes,* 58 Mich. App. 268, 271-72; 227 N.W. 2d 312 (1975); *See also Newman v. Metrish,* 492 F. Supp. 2d 721, 731 (E.D. Mich. 2007); *aff'd* 543 F. 3d 793 (6th Cir. 2008) (internal citation omitted).

In light of the overwhelming evidence against petitioner, coupled with the lack of any evidence pointing to another person as being the shooter, the exclusion of any evidence that Walker had observed drug activity at the gas station on the night in question did not deprive petitioner of his right to present a defense. *Andrews,* 11 Fed. Appx. At 394-95. Petitioner is not entitled to habeas relief on his first claim.

## C. Claim # 2. The pre-arrest silence/ineffective assistance of counsel claim.

Petitioner next claims that his due process rights were violated by the prosecutor's use of his pre-arrest silence, when the prosecutor asked Officer King about whether petitioner had informed King that he had changed his clothes time between the time that Officer King collected his samples and the time the officers arrived at the scene.

Respondent contends that petitioner's claim is procedurally defaulted, because counsel failed to

object to the testimony at trial on the ground that it violated petitioner's Fifth Amendment rights, even though counsel did object to the question as being a leading question. In this case, petitioner claims that his trial counsel was ineffective for failing to object to the question on the proper grounds. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it is easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp.2d 825, 836 (E.D. Mich. 2004).

It is unclear that "clearly established federal law" prohibits the use of a criminal defendant's pre-arrest silence as substantive evidence of guilt. In *Jenkins v. Anderson,* 447 U.S. 231, 238-39 (1980), the United States Supreme Court held that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of a defendant's pre-arrest silence to impeach that defendant's credibility, since the "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." *Id.* However, the Supreme Court indicated that their decision in *Jenkins* did not consider whether or under what circumstances pre-arrest silence may be protected by the Fifth Amendment. *Id.* at 236, n. 2.

The Sixth Circuit, however, has held that the use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *Combs v. Coyle,* 205 F. 3d 269, 283 (6th Cir. 2000). However, the Sixth Circuit acknowledged that the Supreme Court in *Jenkins* never addressed the issue of whether the use of pre-arrest silence as substantive evidence violated the Fifth Amendment. *Id.* at 281. The Sixth Circuit further noted that the federal circuits that had considered the issue were "equally divided" over whether a defendant's

11

pre-arrest silence could be used as substantive evidence of guilt. *Id.* at 282 (collecting cases). Another judge in this district has held that a criminal defendant's pre-arrest silence is not afforded "conclusive protection." *See Martin v. Jabe,* 747 F. Supp. 1227, 1233 (E.D. Mich. 1989).

A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-31 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Moreover, the Sixth Circuit in a recent case has noted that the decision in *Combs* is not controlling on a case like petitioner's because it is a pre-AEDPA (Antiterrorism and Effective Death Penalty Act) decision and therefore decided under a *de novo* standard of review, as opposed to the more deferential standard of review enunciated by the AEDPA. *See Jones v. Trombley*, 307 Fed. Appx. 931, 934, n. 1 (6th Cir. 2009); *cert. den.* 130 S. Ct. 146 (2009).

In the present case, the United States Supreme Court has not spoken dispositively on the issue of whether the use of a criminal defendant's pre-arrest silence as substantive evidence violates the Fifth or Fourteenth Amendments. The Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" among the federal courts concerning the resolution of this issue, precludes this Court from finding that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law, where clearly established Supreme Court precedent on the issue of using pre-arrest silence as substantive evidence of guilt did not, and does not, exist. *See Worden v. McLemore,* 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002)(Cohn, J.). In the lack of

12

Supreme Court precedent on the use of a defendant's pre-arrest silence as substantive evidence of guilt, the state trial court's admission of evidence of defendant's pre-arrest silence as substantive evidence of guilt was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent addressing the Fifth Amendment right to remain silent and the Fourteenth Amendment right to due process so as to warrant federal habeas relief. *See Jones,* 307 Fed. Appx. at 934; *Mitchell v. Lafler,* 118 Fed. Appx. 24, 26-27 (6th Cir. 2004); *Cameron,* 348 F. Supp. 2d at 841-42.

Moreover, any admission of petitioner's pre-arrest silence in this case would have been harmless error at best, in light of the overwhelming evidence against petitioner. *See United States v. Banks,* 29 Fed.Appx. 276, 284 (6th Cir. 2002).

The Court will likewise reject petitioner's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

In light of the fact that the evidence against petitioner was overwhelming in this case, petitioner was not prejudiced by counsel's failure to properly object to the references to petitioner's pre-arrest silence. *See Harding v. Bock,* 107 Fed. Appx. 471, 479-80 (6th Cir. 2004). Petitioner is not entitled to habeas relief on his second claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

13

certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**IV.    CONCLUSION**

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

SO ORDERED.                              s/Paul D. Borman
                                         PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

Dated: January 20, 2010

14

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 20, 2010.

                                          s/Denise Goodine
                                          Case Manager